UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMAR BYRD<br><br>               Defendant. | Crim. Action No. 1:25MJ208 (MJS) |

**EMERGENCY MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A FEDERAL OFFENSE, OR IN THE ALTERNATIVE, RELEASE**

Comes now, Jamar Byrd, through counsel and moves this Court, pursuant to Fed. R Crim. Procedure 12(b)(3)(B)(v), to dismiss the Information for failure to state an offense. Specifically, the Complaint charges Mr. Byrd with knowingly and intentionally forcibly assaulting, resisting, impeding a person designated in 18 U.S.C. § 1114, *i.e.*, a federal officer engaged in his official duties or any person assisting such an officer in the performance of such duties, in violation of 18 U.S.C. § 111(a). However, the statement of facts in support of the complaint clearly alleges that Mr. Byrd assaulted or impeded Metropolitan Police Department (MPD) Officers V1-V5. The officers are not federal law enforcement officers and were not assisting a federal law enforcement officer in his official duty according to the complaint.

**Relevant Background**

Jamar Byrd was arrested on September 5, 2025. According to the statement of facts in support of the complaint, MPD officers, along with a witness from the Drug Enforcement Administration (DEA), was patrolling a neighborhood in Northeast D.C. This array of federal law enforcement officers was not deployed to investigate a possible federal offense or to protect federal property, personnel, or a government function, such

as an official proceeding. Instead, dozens of local and federal law enforcement officers were deployed in Northeast, Washington, D.C. to patrol a commercial district. According to the complaint, law enforcement encountered an individual "behaving in a belligerent manner toward two civilians." The complaint alleges that W-1, the DEA agent approached Mr. Byrd, at which point Mr. Byrd ran towards him. The MPD officers intervened and the officers alleged that Mr. Byrd headbutted, kicked, and licked five MPD officers.

Mr. Byrd was arrested and charged by complaint with one count of assaulting and resisting a federal law enforcement officer in violation of 18 U.S.C. §111(a). He was arrested on September 5, 2025. The government has filed a complaint in this Court as of September 6, 2025, charging him with one count of assaulting, resisting and impeding officers in violation of 18 U.S.C. 111§ (a)(1).

## Argument

Federal Rule of Criminal Procedure 4 and 4.1 requires that a complaint be filed with an affidavit establishing probable cause. A complaint may fail to state an offense if it omits a necessary element of the crime or if the allegations, even if true, do not constitute a violation of the relevant statute. *See,Lange v. United States*, 443 F.2d 720, 727 (D.C. Cir. 1971). The defect in Mr. Byrd's Complaint could not be more apparent: He is charged with assaulting a federal officer, but MPD officers are not federal officers and the complaint does not establish that they were assisting a federal officer in the performance of their official duties as required to for a violation of 18 U.S.C. § 111(a)(1). To the contrary, the complaint alleges that a federal officer was patrolling with MPD

officers to assist with local law enforcement efforts.[1] Patrolling a commercial area is purely a local function and in no way is a federal duty.[2] The complaint does not allege that enforcing local crimes was an "official duty" of any federal officer in this case.

The complaint references the President's Executive Order Declaring a Crime Emergency in the District of Columbia, issued on August 11, 2025, and alleges thato officers were deployed pursuant to this Order "for federal purposes." The Order reads in pertinent part:

> I determine that special conditions of an emergency nature exist that require the use of the Metropolitan Police Department of the District of Columbia (Metropolitan Police force) for Federal purposes, including maintaining law and order in the Nation's seat of Government; protecting Federal buildings, national monument, and other Federal property; and ensuring conditions necessary for the orderly functioning of the Federal Government. Effective immediately, the Mayor of the District of Columbia

---

[1] The disorderly conduct statute, D.C. Code § 22–1321 (2001), punishes anyone who, "with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby: (1) acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others...." In *In re M.W.G.,* 427 A.2d 440, 442 (D.C. 1981), the D.C. Court of Appeals explained that disorderly conduct requires that a defendant "create[] a substantial risk of a breach of the peace [. . . ] provok[ing] a violent response by police officers" and emphasized that disorderly conduct does not occur in the absence of "words likely to produce violence on the part of others." Mr. Wilson did not commit disorderly conduct.

[2] "[T]he [Supreme] Court has consistently disapproved governmental action imposing criminal sanctions or denying rights and privileges solely because of a citizen's association with an unpopular organization" or "guilt by association." *Healy v. James*, 408 U.S. 169, 185–86 (1972) ) (citing *United States v. Robel*, 389 U.S. 258 (1967); *Keyishian v. Board of Regents*, 385 U.S. XX, 605—610; Elfbrandt v. Russell, 384 U.S. 11 (1966); *Scales v. United States*, 367 U.S. 203, 81 (1961). Indeed, attempts to criminalize the actions of a group of individuals questioning the conduct of government actors – even when doing so passionately – infringes on well-established First Amendment rights and is anathema to a free democracy. *See City of Houston v. Hill,* 482 U.S. 451, 461 (1987), quoting *Terminiello v. Chicago,* 337 U.S. 1, 4 (1949) ("Speech is often provocative and challenging.... [But it] is nevertheless protected against ... punishment, unless shown likely to produce a clear and present danger of a serious substantive evil ... [beyond] public inconvenience, annoyance, or unrest").

> shall provide the services of the Metropolitan Police force for Federal purposes for the maximum period permitted under section 740 of the Home Rule Act.

"Declaring a Crime Emergency in the District of Columbia," Exec. Order No. 14,333 (Aug. 11, 2025).

Section 740 of the District of Columbia Home Rule Act, in turn, outlines the President's authority to request the assistance of MPD for federal purposes during emergencies. This authority is limited in scope and must be administered through the Mayor. The Act states in pertinent part:

> Notwithstanding any other provision of law, whenever the President of the United States determines that special conditions of an emergency nature exist which require the use of the Metropolitan Police force for federal purposes, he may direct the Mayor to provide him, and the Mayor shall provide, such services of the Metropolitan Police force as the President may deem necessary and appropriate.

D.C. Code. § 1-207.40(a). Thus, the August 11th Executive Order and the Home Rule Act reinforce what the facts alleged in the complaint establish: MPD Bell was not an "officer or employee of the United States or of any agency in any branch of the United States Government" and was not "assisting" an identified officer or employee in the performance of the officer's "official duties." 18 U.S.C. § 1114. Rather, the officers were on patrol as employees of the MPD under the direct control of the Mayor. Federal official was assisting MPD officers with enforcement of a purely local crime. Consequently, the complaint does not allege that Mr. Byrd "forcibly assault[ed], resist[ed], oppose[d], impede[d], intimidate[d], or interfere[d] *with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties*" as §

111(a)(1) requires. The Complaint therefore fails to state an offense and must be dismissed.

In the alternative, Mr. Byrd requests his immediate release, on his own personal recognizance, and that the Court issue a summons for his appearance at a later date, given the delay in his initial appearance through no fault of his own.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
EUGENE OHM
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500