UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**JAMAR BYRD,**<br>        **Defendant.** | 1:25-MJ-208 |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to the defendant Jamar Byrd's ("Byrd") Motion to Dismiss the Complaint, filed at ECF No. 3 ("Def. Mot."). Byrd, through counsel, moves this Court to dismiss the Complaint pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v) or, in the alternative, to order his release. *See generally* Def. Mot., ECF No. 3. In support of his argument, Byrd claims that the complaint fails to show that members of the Metropolitan Police Department (MPD) are federal law enforcement officers and/or were assisting a federal law enforcement officer in their official duties. For the reasons set forth below, the Motion fails. In support of this opposition, the United States relies on the points and authorities set forth below, and any additional points and authorities which may be cited at a hearing on this motion.

### FACTUAL BACKGROUND

On Friday, September 5, 2025, at approximately 10:05 PM, MPD members from the Fifth District were patrolling in the area of 8th and H Streets, NE, Washington, DC 20002. At the time of the offense, MPD members were mobilized for federal service pursuant to President Trump's August 11, 2025, Executive Order, "Declaring a Crime Emergency in the District of Columbia."

1

MPD members were accompanied by W-1, a Special Agent of the United States Drug Enforcement Administration (DEA). While on patrol, W-1 observed Jamar Byrd behaving in a belligerent manner toward two civilians. W-1 began to approach Byrd, at which point Byrd began running toward W-1 with a clenched fist. This interaction is captured on the body-worn camera clip below.



*Byrd Approaching W-1 with A Clenched Fist*

At that point, MPD members intervened to assist, W-1, the DEA agent. When MPD members attempted to calm the situation, Byrd became physically combative. Specifically, Byrd headbutted MPD Officer V-1 in the face and kicked him in his left leg. Byrd kicked MPD Officers

V-2 and V-3 multiple times each in the leg.  In addition, Byrd licked MPD Officer V-4 on his shirt, grabbed him by his shirt, and then proceeded to kick V-4.



*Still of V-1's Body-Worn Camera Footage As Byrd Headbutted Him*

3



***Byrd Kicking Officers***

Byrd also kicked MPD Sergeant V-5 in both legs.



***Byrd's Leg (Red Circle) Kicking V-5's Shin (Yellow Arrow)***

MPD Officers placed Byrd under arrest in connection with his conduct on scene.

## LEGAL STANDARDS

A.  <u>Rule 12 Motions to Dismiss for Failure to State a Claim</u>

Rule 12(b)(3)(B)(v) provides that an objection regarding a "defect in the indictment or information," to include "failure to state an offense," must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits. Fed. R. Crim. P. 12(b)(3)(B)(v). Courts have acknowledged that this is a "limited ground for seeking relief." *United States v. Horvath*, 2025 WL 460032, at *3 (D.D.C. Feb. 11, 2025). A charging document need not be a lengthy, involved document. *See United States v. Cua*, 657 F. Supp. 3d 106, 122 (D.D.C. 2023) ("The Federal Rules of Criminal Procedure require that an

5

indictment consist of 'a plain, concise, and definite written statement of the essential facts constituting the offense charged.'") (quoting Fed. R. Crim. P. 7(c)(1))).

Indeed, where there are any factual issues at all to flesh out, the government is entitled to present its evidence at trial. *United States v. Yakou*, 428 F.3d 241, 247 (D.C. Cir. 2005) (it is an "unusual circumstance for the district court to resolve the sufficiency of the evidence before trial because the government is usually entitled to present its evidence at trial"). "Because pretrial dismissal of an indictment 'directly encroaches upon the fundamental role of the grand jury, dismissal is granted only in unusual circumstances.'" *United States v. Caldwell*, 581 F. Supp. 3d 1, 10 (D.D.C. 2021) (quoting *United States v. Ballestas*, 795 F. 3d 138, 148 (D.C. Cir. 2015)). Courts have acknowledged that this framework applies in the context of an information as well. *United States v. Felix-Marqus*, 2015 WL 4663224, at *1 (E.D. Mich. Aug. 6, 2015) (declining to dismiss a count in a criminal information noting that "at this stage of the case, the focus must be confined to the pleadings—here, the information—which contains allegations that make out the felony offense charged under 18 U.S.C. § 111(a).").

B. <u>Assault on a Federal Officer</u>

18 U.S.C. § 111(a) criminalizes the conduct where someone "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties." 18 U.S.C. § 111. In turn, Section 1114 designates "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance" as being covered under Section 111(a). 18 U.S.C.A. § 1114. Whether the

6

individual in question is a federal officer or is a person assisting a federal officer is a legal question for the Court. *United States v. Martin*, 163 F.3d 1212, 1214 (10th Cir. 1998). On the other hand, the determination of whether the individual "was engaged in the performance of federal duties" at the time of the offense is a factual question left to the jury. *Id.*

## ARGUMENT

Rule 12 does not provide legal authority for the defense to seek dismissal of the complaint; rather, it explicitly only contemplates dismissal of an information or indictment. Separately, the complaint sufficiently alleges that MPD officers were actors within the scope of Section 1114 when they were assaulted by Byrd. The Court can look at this issue through two lenses. First, pursuant to the August 11, 2025, Executive Order, the MPD officers were federal officers. Second, the MPD officers were assisting a federal agent, the DEA agent on scene, who was being accosted by the defendant.

   A. <u>Rule 12 Only Contemplates Dismissal of an Information or Indictment.</u>

Byrd's motion fails for the simple reason that Rule 12 only provides the defense with a mechanism to dismiss an information or an indictment. By its own terms, Rule 12(b)(3)(B)(v) allows the defense to move for dismissal based on "a defect in the *indictment* or *information*." Fed. R. Crim. P. 12(b)(3)(B)(v) (emphasis added).[1] Here, Byrd has been charged via complaint.

If the Supreme Court, in adopting the Federal Rules of Criminal Procedure, wished to include the dismissal of complaints under Rule 12's umbrella, it certainly knew how to do so. Notably, Rule 48, which allows the prosecution to move for dismissal of charges states, "The

---

[1] The government is aware that this District has previously addressed a motion to dismiss a criminal complaint under Rule 12. *See, e.g.*, *United States v. Al Sharaf*, 183 F. Supp. 3d 45 (D.D.C. 2016) (denying motion to dismiss complaint based on defendant's alleged diplomatic immunity). However, it does not appear that the government argued that Rule 12 was not available to the defense in that case.

7

government may, with leave of court, dismiss an indictment, information, or *complaint*." Fed. R. Crim. P. 48(a) (emphasis added). The exclusion of the word "complaint" in Rule 12 and its inclusion in Rule 48 suggests that the delineation is intentional. *Cf. Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 765 (2019) ("[W]e are hardly free to extend a federal statute to a sphere Congress was well aware of but chose to leave alone. In this, as in any field of statutory interpretation, it is our duty to respect not only what Congress wrote but, as importantly, what it didn't write.").

    B.  <u>The MPD Officers Acted in a Federal Capacity Based on the President's Directives.</u>

Even if the Court decides that Rule 12 is applicable to a complaint, Byrd's motion fails. By virtue of the President's Executive Orders and the powers afforded under the Home Rule Act, the MPD officers in this case were effectively deputized as federal agents.

President Trump's March 28, 2025, Executive Order "Making the District of Columbia Safe and Beautiful" discusses the creation of a federal law enforcement task force that focuses on the District of Columbia. It states, in relevant part:

> My Administration shall work closely with local officials to share information, develop joint priorities, and maximize resources to make the District of Columbia safe. Such coordination shall occur through the D.C. Safe and Beautiful Task Force (Task Force), which is hereby established by this order. The Task Force shall be chaired by the Assistant to the President and Homeland Security Advisor or his designee, and shall otherwise include representatives from [various federal agencies and components]."
>
> > "Making the District of Columbia Safe and Beautiful," Exec. Order No. 14,252 (March 28, 2025).

President Trump's August 11, 2025, Executive Order "Declaring a Crime Emergency in the District of Columbia" states, in relevant part:

> I determine that special conditions of an emergency nature exist that require the use of the Metropolitan Police Department of the District of Columbia (Metropolitan Police force) for Federal purposes, including maintaining law and

8

order in the Nation's seat of Government; protecting Federal buildings, national monuments, and other Federal property; and ensuring conditions necessary for the orderly functioning of the Federal Government. Effective immediately, the Mayor of the District of Columbia (Mayor) shall provide the services of the Metropolitan Police force for Federal purposes for the maximum period permitted under section 740 of the Home Rule Act."

"Declaring a Crime Emergency in the District of Columbia," Exec. Order No. 14,333 (Aug. 11, 2025).

In turn, Section 740 of the Home Rule Act states:

Notwithstanding any other provision of law, whenever the President of the United States determines that special conditions of an emergency nature exist which require the use of the Metropolitan Police force for Federal purposes, he may direct the Mayor to provide him, and the Mayor shall provide, such services of the Metropolitan Police force as the President may deem necessary and appropriate.

D.C. Code. § 1-207.40(a).

Specifically, the Executive Order states that the Mayor "shall provide the services of the Metropolitan Police force for Federal purposes." This unambiguous language establishes that, for the duration of the period allowed under the Home Rule Act, MPD members acts as an "officer or employee of the United States" within the meaning of Section 1114. The language of the Home Rule Act is compulsory, using the word, "shall." MPD was not simply cooperating with the federal government. It was acting at its direction, essentially as members of a federal task force created by President Trump.

"[A] local police officer who had been deputized as a member of the Task Force—was a 'federal officer' for section 111 purposes." *United States v. Luna*, 649 F.3d 91, 102 (1st Cir. 2011) (local officer deputized to assist FBI task force); *United States v. Brown*, 76 F.4th 1073 (8th Cir. 2023) (Missouri police officer working on ATF Task Force; an officer can be "engaged in the performance of official [federal] duties" while simultaneously fulfilling state duties), *cert. denied*, 144 S. Ct. 1037, 218 L. Ed. 2d 191 (2024); *United States v. Luedtke*, 771 F.3d 453, 455 (8th Cir.

9

2014) (state corrections officers qualified under Section 111 by virtue of an intergovernmental service agreement with the United States Marshals Service); *Martin*, 163 F.3d at 1215 (finding that a local Oklahoma Police Department detective was a federal officer under § 1114 because he was deputized to participate in a federal narcotics investigation at the time that the charged conduct occurred); *United States v. Diamond*, 53 F.3d 249, 251–52 (9th Cir. 1995) (finding that a local Oregon Sheriff's Deputy cross-deputized as a special deputy U.S. marshal, assigned to the FBI Fugitive Task Force, and acting at the direction of a federal agent was a federal official under § 1114).

    C. <u>The MPD Officers Were Assisting a Federal DEA Agent.</u>

As the evidence shows, a DEA Agent participating in the Make the District Safe and Beautiful Initiative was accosted by an unruly individual. At this point, the MPD officers moved to assist their federal colleague. By providing such assistance to a federal officer, the MPD officers acted in the federal capacity for purposes of the protections afforded by Section 111.

In determining whether an individual is a person "assisting" a federal officer, the issue can be framed as "whether the performance of his [or her] official duties was for the purpose of assisting a federal officer." *See United States v. Ama*, 97 F. App'x 900, 901–02 (10th Cir. 2004). The plain meaning of the term assist means "to give support or aid." *See United States v. Holder*, 256 F.3d 959, 965 (10th Cir. 2001) (quoting *United States v. Murphy*, 35 F.3d 143, 145 (4th Cir. 1994)). A court may find "assistance" where there is "some mutual contemporaneous involvement" between state and federal law enforcement officials. *See United States v. Smith*, 296 F.3d 344, 347 (5th Cir. 2002) (concluding that Dallas police officers were assisting a federal officer where the evidence showed that "the Dallas police officers and the FBI agents were jointly pursuing a suspect in a federally-investigated bank robbery"). However, the "physical presence of

a federal agent at the time of the assault [or attempted assault] is not required." *See Ama*, 97 F. App'x at 902.

Additionally, courts have concluded that a state officer, or even a private citizen, is a person "assisting" a federal officer where they are "acting in cooperation with and under control of federal officers." *See United States v. Williamson*, 482 F.2d 508, 512 (5th Cir. 1973) (finding a state narcotics agent was an official protected under section 111 where the agent was acting in cooperation with and under control of federal officers in effecting an arrest for violations of federal drug laws when he was assaulted); *United States v. Hooker*, 997 F.2d 67, 74 (5th Cir. 1993) (finding a Mississippi Bureau of Narcotics officer to be a federal agent where he was "enlisted" by the DEA to assist with a coordinated federal drug investigation and was attacked during the surveillance investigation); *United States v. Bedford*, 914 F.3d 422, 428 (6th Cir. 2019) (finding a truck driver employed by a private trucking company that had a contract with the U.S. Postal Service to transport mail was a person assisting a federal officer or employee when he was attacked while transporting U.S. mail). The MPD officers easily fit within the statutory definition of Section 1114 given their efforts to intervene when their DEA colleague was attacked on the street.

    D.  <u>The MPD Officers Were Performing Official Duties.</u>

"Engaged in the performance of official duties" means "acting within the scope of what the agent is employed to do" as opposed to "engaging in a personal frolic of his own." *United States v. Brown*, 76 F.4th 1073, 1077 (8th Cir. 2023) (internal citation and quotation marks omitted), *cert. denied*, 144 S. Ct. 1037, 218 L. Ed. 2d 191 (2024). Courts will look to "whether the officer's actions fall within the agency's overall mission" or are otherwise "what an officer ought to do because of being an officer." *Id*. (citing *United States v. Street*, 66 F.3d 969, 978 (8th Cir. 1995). "The parameters of the statutory requirement that a federal official covered by the act must

11

be engaged in the performance of his official duties are inherently fluid." *United States v. Paitsel*, 147 F.4th 1010, 1025 (D.C. Cir. 2025) (discussing breadth of the term "official duty" in Section 111 in construing similar term in the federal bribery statute). Here, the defendant cannot credibly claim that the MPD officers were not acting within the scope of their official duties when conducting crime patrols as part of the President's effort to decrease crime in the District of Columbia.

## CONCLUSION

For all the foregoing reasons, and any additional points and authorities which may be cited by the government at a hearing on this motion, Byrd's Motion to Dismiss should be denied.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:  */s/ Caelainn Carney*
CAELAINN CARNEY
Assistant United States Attorney
District of Columbia
N.Y. Bar No.5751672
601 D Street, NW
Washington, DC 20530
202-252-2673
Caelainn.carney@usdoj.gov